UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

| | | |
|---|---|---|
| STEVEN OGLE #257868, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:05-cv-289 |
| | ) | |
| v. | ) | HON. R. ALLAN EDGAR |
| | ) | |
| UNKNOWN THOMPSON, et al., | ) | |
| | ) | **OPINION** |
| Defendants. | ) | |
| | ) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), the court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. The court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 595 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S. Ct. 1728, 1733 (1992). Applying these standards, the court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.      Factual Allegations**

Plaintiff Steven Ogle, an inmate at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Sergeant Thompson, Assistant Deputy Warden D. Maclaren, and Corrections Officer Wilkins, all of whom were employed at the Chippewa Correctional Facility (URF) during the pertinent time period. Plaintiff alleges that on June 21, 2005, while he was incarcerated at URF, Defendant Wilkins walked by Plaintiff's cell when handing out meal trays. Plaintiff had recently awakened and did not make it to the door fast enough. Defendant Wilkins thought that it was funny and had done the same thing on other occasions.

Plaintiff claims that Policy Directive 04.05.120 requires that segregation prisoners be provided with three meals per day "served from the same menu available to general population prisoners." Plaintiff also states that Policy Directive 03.03.130 requires that all prisoners be provided with "wholesome and nutritionally adequate meals." Plaintiff states that Defendant Wilkins violated MDOC policy when he denied Plaintiff his meal tray. Plaintiff states that "with Policy on his side," he covered his cell door window and demanded to be given his tray. Defendant Wilkins then called Defendant Thompson, who instructed Plaintiff to remove the covering from his window. Plaintiff did not comply and again demanded his tray. Defendant Thompson said that he did not give out food trays, but that he would be "glad to get the goon squad over to Plaintiff's cell to fuck him up real bad if he didn't take the paper out of his window."

Plaintiff claims that shortly thereafter, a squad of corrections officers dressed in padding and gas masks and carrying clear poly-blend plastic shields opened Plaintiff's food slot and

sprayed a chemical agent into his cell. Plaintiff contends that he is asthmatic and nearly died. Plaintiff alleges that Defendant Maclaren authorized the use of chemical agents on Plaintiff despite the fact that Plaintiff had a history of asthma and use of the medications Albuterol and Flovent. When Plaintiff filed a grievance regarding the use of chemical agents, the response indicated that Health Services had been contacted and determined that Plaintiff was a normal risk for chemical agents. Plaintiff states that this approval from Health Services is erroneous.

Plaintiff attaches an affidavit from a fellow prisoner, Jessie Huffman #434572, which supports Plaintiff's claim that he was not given his meal tray because he was not at his cell door. In addition, prisoner Huffman attested that Plaintiff complained of being unable to breathe after being gassed and that Defendants laughed and did not give him medical attention. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

## II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993), *cert. denied*, 510 U.S. 1177, 114 S. Ct. 1218 (1994). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2255 (1988); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994).

Plaintiff appears to be claiming that Defendants' conduct in denying him his tray and "gassing" him on June 21, 2005, violated his rights under the Eighth Amendment. Plaintiff concedes that he was ordered to remove the paper from his window, and that he refused to comply with this order. However, Plaintiff states that Defendants should not have used chemical spray on Plaintiff because they knew that he is asthmatic and would likely suffer an asthma attack as a result of being exposed to the chemical spray and gas.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged "must result in the denial of 'the minimal civilized measure of life's necessities.'" *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. Moreover, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

As noted above, Plaintiff claims that he was improperly denied his food tray on the date in question. However, the denial of a meal on one occasion does not rise to the level of an Eighth Amendment violation. *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir.1998); *Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977). Therefore, this claim is properly dismissed.

Plaintiff also claims that the Defendants improperly sprayed him with a chemical agent. The Eighth Amendment prohibits cruel and unusual punishment, and limits the power of the states to punish those convicted of a crime. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. Id. (citing *Whitley*, 475 U.S. at 321). Under this standard, even deadly force may be constitutionally appropriate under certain circumstances. *Gravely v. Madden*, 142 F.3d 345, 348 (6th Cir. 1998).

The analysis of the degree of force used must be made in the context of the constant admonitions by the Supreme Court that courts must accord deference to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g., Whitley*, 475 U.S. at 321-22. Plaintiff alleges that Defendants violated his rights by applying a chemical agent when they knew that he was asthmatic. However, at that point in time, Plaintiff had already covered his cell window with paper and had refused to remove the paper and demanded his

meal tray. Considering Plaintiff's noncompliance with Defendants' orders, Defendants' use of force was reasonable.

Inmates cannot be permitted to decide which directives they will obey and when they will obey them. *See Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). In circumstances where lawful orders or rules are being disregarded, prison officials are entitled to use a reasonable amount of force to obtain compliance. *Id.* "One can quickly reason what would happen in a maximum security prison without proper discipline." *See Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). In an unpublished case, the Sixth Circuit stated:

> Plaintiff was sprayed with gas only after he refused to allow Officer Beesley to place him in restraints. Under these circumstances, the defendants acted reasonably in spraying gas at plaintiff. This allowed them to restrain plaintiff in a more peaceful manner. Therefore, it was plaintiff's own conduct which necessitated the use of the gas.

*Knuckles El v. Koskinen*, No. 97-1642, 1998 WL 415847, at *2 (6th Cir. June 16, 1998). Similarly, Plaintiff's own conduct in covering his cell window and refusing a direct order to remove the covering required the use of force to obtain his compliance

The decision to use a chemical agent to obtain physical control is generally preferable to the use of physical force. The court assumes that prison officials could have attempted a "cell-rush" with shields, truncheons, and handcuffs to forcibly enter Plaintiff's cell in an attempt to subdue and restrain him, rather than using gas. However, other courts have found that these types of physical confrontations are less safe than using tear gas or mace because of the greater risk of injury to staff, the inmate, or both. *Caldwell*, 968 F.2d at 602; *Soto*, 744 F.2d at 1262. Thus, the Defendants in this action chose to use a lesser degree of force. With regard to Plaintiff's claim that he should not have been gassed because he is an asthmatic, the step I grievance response to

Grievance Number URF 0506 1158 22Z, which is attached as an exhibit to Plaintiff's complaint, shows that Health Service was contacted and determined that Plaintiff was a normal risk for chemical agents. In the Step II Response to Grievance Number URF 0506 1158 22Z, which is also attached to the complaint, the respondent states:

> The grievant's Step II appeal states that if staff would have complied with his direct order to give him his dinner tray he would have removed the toilet paper. Instead, he says he was assaulted with a deadly weapon, and staff conspired to murder him. He then states, "the next time your guards gas me again when they open up that food latch to spray me I'm going to take the gas can from them and spray your guards!" He again requests a copy of the Critical Incident Report. He also requests a police report be completed for the staff that assaulted him. He also requests a transfer to a federal prison.
>
> The Special Housing Unit Record form CAJ278 indicates that Mr. Ogle refused his dinner meal on 6/21/05, covering up his window with toilet paper and refusing to remove it. Chemical agents were authorized and used per PD 04.05.112 Managing Disruptive Prisoners. No violation of this PD has been demonstrated. Chemical agents are not considered deadly weapons as indicated by Mr. Ogle and there is no evidence found to remotely suggest that any staff member conspired to murder him.

Plaintiff does not allege that he suffered any long-term injuries as a result of being gassed. Plaintiff's alleged injuries, which include coughing and difficulty breathing, appear to be no more than the normal after effects of being exposed to gas and/or chemical agents. Therefore, the fact that Plaintiff was an asthmatic does not appear to have been a factor in his injuries. Given the undisputed facts, the decision to use a chemical agent in order to place Plaintiff in restraints did not violate the Eighth Amendment.

        Plaintiff also contends that Defendants violated MDOC policy when they did not give him his dinner and when they used a chemical agent on him for refusing a direct order to remove the

paper from his cell window. These due process claims merit little discussion. Claims under § 1983 may not be based upon alleged violations of state law, nor may federal courts order state officials to comply with their own law. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Plaintiff does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994).

In addition, the Substantive Due Process Clause does not provide any basis for relief. "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205(1952); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir.1993)); *see also Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997). Plaintiff's allegations in this case fail to meet this formidable standard and thus, he fails to state a claim that his substantive due process rights were violated.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c).

The court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court dismisses the action, the court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the court will assess the $255

appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This dismissal counts as a strike for purposes of 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated: *February 17, 2006*              /s/  *R. Allan Edgar*
                                                            R. ALLAN EDGAR
                                                            UNITED STATES DISTRICT JUDGE